UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MAIZIE AVICHAIL, ) | |
| as next friend for T.A., a minor, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:09CV00069 ERW |
| ) | |
| ST. JOHN'S MERCY HEALTH SYSTEM, ) | |
| a Missouri non-profit corporation ) | |
| doing business as St. John's ) | |
| Mercy Medical Center, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiff's Motion for New Trial Pursuant to Federal Rule of Civil Procedure 59(a)(1)(A) [doc. #165].

**I.    BACKGROUND**

This litigation arose out of events that occurred after T.A. had tongue reduction surgery to correct a condition caused by T.A.'s Beckwith-Wiedemann Syndrome. Plaintiff Maizie Avichail alleges that T.A. suffered injuries while recovering from her surgery, when her oxygen saturation level fell from 94% to 50%. Plaintiff, as next friend for T.A., a minor, filed a one-count complaint against St. John's Mercy Health System, Geraldine Jones, and Fastaff, Inc. (collectively, "Defendants"), alleging medical malpractice and negligence. On October 26, 2010, following a seven-day jury trial, the jury returned a verdict in favor of Defendants, and the Court entered judgment to that effect. Subsequently, Plaintiff filed the pending Motion for New Trial, arguing that the Court improperly overruled one of Plaintiff's peremptory challenges, and that the

Court improperly prohibited Plaintiff from using an interpreter during the testimony of witness Josephine Carolino.

**II.  LEGAL STANDARD**

Following a jury trial resulting in an adverse judgment, a party may move for a new trial under Federal Rule of Civil Procedure 59(a)(1)(A).  Under this Rule, "[a] new trial is appropriate when the first trial, through a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial, resulted in a miscarriage of justice."  *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996).  A miscarriage of justice does not result whenever there are inaccuracies or errors at trial; instead, the party seeking a new trial must demonstrate that there was prejudicial error.  *See Buchholz v. Rockwell Int'l Corp.*, 120 F.3d 146, 148 (8th Cir. 1997).  Errors in evidentiary rulings or in jury instructions are only prejudicial, and therefore only represent a miscarriage of justice that requires a new trial, where the error likely affected the jury's verdict.  *See Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 720 (8th Cir. 2008); *Diesel Mach., Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 833 (8th Cir. 2005); *Bevan v. Honeywell, Inc.*, 118 F.3d 603, 612 (8th Cir. 1997).

**III.  DISCUSSION**

Plaintiff asserts that a new trial is necessary to avoid a miscarriage of justice because (1) the Court erred in overruling the peremptory challenge Plaintiff exercised against Juror 17, and (2) the Court erred in disallowing Plaintiff's use of interpretation services from Tagalog to English by a Tagalog interpreter, Dennis Castro, during the testimony of witness Josephine Carolino.

## A. PEREMPTORY CHALLENGE OF JUROR 17

There were thirty-two potential jurors in the jury panel selected for this case (they were numbered 1-33, with no potential juror assigned number 7). The Court struck four of these potential jurors for hardship, and one for cause, leaving twenty-seven potential jurors. The Court then randomly eliminated thirteen of the twenty-seven potential jurors, for a total of fourteen jurors available for peremptory challenge, of which each side was permitted three. Plaintiff's counsel named Juror 17, Juror 23, and Juror 26 for his three peremptory strikes. Counsel for Defendants Jones and Fastaff, Inc. raised a *Batson* challenge with respect to Juror 17, who is African-American, stating:

> I have a concern with respect to No. 17. If memory serves me, [Juror 17] is an African-American. . . . My client is an African-American. I'm concerned about *Batson* implications. I think at a minimum [Plaintiff's counsel] has to offer some objective nonrace-based rationale for [Juror 17] to be excused. And, frankly, my notes on her are awfully small compared to the others. All I know is that she lives in and works in the City of St. Louis, and she likes to swim.

(Transcript, Defs.' Ex. 1, doc. #173-1, p.94 l.14-23). The Court noted that because a *Batson* challenge had been made, Plaintiff was required to come forward with a race neutral explanation for striking Juror 17, and then the Court would decide whether the strike was based on race. Counsel for Plaintiff explained as follows:

> First of all, I'll tell the Court as I'm going through these and until counsel mentioned it, I had forgotten that she's of African-American descent. I -- I don't know if anybody else I struck is of African-American descent or not. . . . It's simply not something I think about, so that wasn't into it. The reason I struck her is she has some college. She gave us very little information; only hobby is swimming. She just didn't seem to me to be a person who was involved enough to be able to understand what is going on in this case. I'm just -- with the little information I received from her. She wasn't -- She wasn't forthcoming with any information as the others were, and that's, frankly, the reason I struck her.

(Transcript, Defs.' Ex. 1, doc. #173-1, p.95 l.8-22). This Court ultimately determined that similarly situated potential jurors of another race were not challenged, and thus granted Defendants Jones and Fastaff, Inc.'s *Batson* challenge. Plaintiff now argues that the Court's decision to grant the *Batson* challenge was error because Defendants did not prove purposeful discrimination.

The procedure for addressing a *Batson* challenge is well-established:

> A *Batson* challenge requires a three-step, burden-shifting analysis. First, the opponent of a peremptory strike must make a prima facie case of racial discrimination. The burden of production then shifts to the proponent of the strike, who must tender a race-neutral explanation. Finally, if a race-neutral explanation is presented, the trial court must determine whether the opponent of the strike has proved purposeful racial discrimination.

*United States v. Jones*, 245 F.3d 990, 992 (8th Cir. 2001). "At the second step of the analysis, the [proponent of the strike]'s reason does not necessarily have to make sense, but it must be one that does not deny equal protection. Therefore, discriminatory intent cannot be inherent in the reason." *Id.* at 993 (internal citation omitted). "Because the burden of persuasion remains with the [opponent of a peremptory strike], even if the courts finds the [proponent of the strike]'s justification 'implausible or fantastic,' if it is race neutral, the court must proceed to the third step." *Id.* (quoting *Purkett v. Elem*, 514 U.S. 765, 768 (1995)). "The plausibility or persuasiveness of the justification becomes relevant at [the] final step . . . . Therefore, even though the [proponent of the strike]'s stated reason is race neutral, [the opponent of the strike] may be able to prove it merely pretextual." *Id.* Further, "[a]lthough determination of the [proponent of the strike]'s motivation turns primarily on the court's assessment of credibility and demeanor, a party can establish an otherwise neutral explanation is pretextual by showing that the

4

characteristics of a stricken black panel member are shared by white panel members who were not stricken." *Id.* (internal quotations anchard alterations omitted).

In this case, it is undisputed that Defendants made a prima facie case of race discrimination (by demonstrating that Defendant Jones and Juror 17 were both African-American), and that Plaintiff in response asserted a race-neutral explanation (that Juror 17 had some college and that the paucity of information about her[1] left Plaintiff's counsel feeling uncomfortable). Thus, the sole issue becomes whether Plaintiff's race-neutral explanation was merely pretextual. In deciding this issue, the Court considered whether there were any potential jurors who shared the race-neutral characteristics cited by Plaintiff, who were not African-American, and who were not subject to a peremptory strike by Plaintiff. The Court found that there were "other jurors with the same or similar circumstances that were assigned as race neutral reasons. There were several jurors. I note Juror No. 2 specifically said that she didn't have anything to say at all, and there were others with 'some college.'" (Transcript, Defs.' Ex. 1, doc. #173-1, p.98 l.25-p.99 l.4). Plaintiff's counsel's then argued that "we don't know anything about [Juror 17]. . . . None of the others that said 'some college' are on that same basis." In response, the Court stated:

> Well, that's true. But another of your reasons was that the person said little or anything, and there were other jurors who said nothing about -- or very little about their private life, although I'll have to say that this juror -- this panel was more specific in its statements than most are, but there were others who did -- who said very little.

---

[1]The issue of why exactly so little information was known about Juror 17, an issue which the respective parties address at some length in their briefs regarding Plaintiff's Motion for New Trial, is irrelevant to the Court's re-examination of the *Batson* issues implicated in Plaintiff's attempted peremptory strike of Juror 17.

(Transcript, Defs.' Ex. 1, doc. #173-1, p.99 l.13-22).[2]

The Court has reviewed its analysis of the *Batson* issues presented during voir dire in this case, and stands by its decision to grant Defendants' *Batson* challenge. There were at least three non-African-American jurors available for peremptory challenge who only had "some college," but who were not subject to a peremptory strike by Plaintiff: Juror 12, Juror 15, and Juror 32.[3] There were also several non-African-American jurors available for peremptory challenge about whom counsel for the respective parties knew very little. For example, the only information known about Juror 27 is that he has a sister-in-law who is a nurse, he has six kids, and he likes to work around the house. The only information known about Juror 30 is that he was sued by an insurance company for a traffic accident, he sells used equipment, and he likes outdoor activities. Neither Juror 27 nor Juror 30 were subject to peremptory strikes by Plaintiff, despite the paucity of information about them. Thus, the Court finds that there was sufficient evidence to conclude that Plaintiff's race-neutral explanation was pretextual. *See United States v. Jenkins*, 52 F.3d 743, 747 (8th Cir. 1995) ("Pretext can be shown by evidence that non-stricken white panel members share the characteristics of a stricken minority panel member.")

Plaintiff seems to argue that Defense counsel's statement that he also did not have very much information about Juror 17 somehow supports Plaintiff's argument that she had race-

---

[2]The Court notes that it did not specify which jurors in particular it considered in concluding that there were other jurors who said very little, however, this does not mean that it did not take specific jurors into consideration at the time of the determination.

[3]The Court notes that Juror 2 also was not African-American and had only "some college," but Juror 2 was eliminated from the jury pool when the Court randomly reduced the number of potential jurors to fourteen. There was some talk of Juror 7 only having "some college," but there was no Juror 7 in the jury pool.

6

neutral, non-pretextual reasons for striking Juror 17.[4] This Court fails to see the connection. Counsel for Defendants Jones and Fastaff, Inc. clearly made the statement about the lack of information on Juror 17 to demonstrate that there could not be a race-neutral reason for striking her. Counsel was attempting to point out that there was so little known about Juror 17, that it seems likely that Plaintiff's peremptory strike was based on race.

Moreover, and most importantly, Plaintiff fails to make any argument whatsoever as to how the Court's refusal to strike Juror 17, and Juror 17's ultimate service on the jury, amounted to a *prejudicial* error. Plaintiff has not explained how Juror 17's presence on the jury negatively affected the outcome of the case, nor has she made any argument that the outcome would have been different if the Court had permitted Plaintiff to strike Juror 17. As such, the Court cannot conclude that a new trial is necessary due to its refusal to allow Plaintiff to exercise a peremptory strike with respect to Juror 17.

### B. USE OF TRANSLATOR DURING TESTIMONY OF MS. CAROLINO

Plaintiff also argues that a new trial is necessary because the Court erroneously denied her request to use an interpreter during the trial testimony of witness Josephine Carolino. Ms. Carolino, the caregiver of T.A., speaks English, but her native language is Tagalog. There was no interpreter present at the deposition of Ms. Carolino, which took place several months before trial. Then, less than a week before the trial began, Plaintiff requested that the Court permit the use of an interpreter during Ms. Carolino's testimony at trial. This Court ultimately determined

---

[4]In her Reply Brief, Plaintiff argues, "given that even Defendant's counsel admitted that 'frankly, my notes on her are awfully small compared to the others. All I know is that she lives in and works in the City of St. Louis, and she likes to swim,' and that 'I think we all agree that we know very little about her' it strains credulity for Defendant to claim that Plaintiff's explanation, based on that very reason, could be reasonably found to be pre-textual." (Reply, doc. #174, p.4).

that Plaintiff would be permitted to have a Tagalog-English interpreter present in the courtroom during the trial, whose services would only be utilized if it became apparent that Ms. Carolino was having difficulty understanding or answering the questions asked of her. Despite his presence in the courtroom, the interpreter was not called upon to translate for Ms. Carolino during the jury trial in this case.

"It is well settled that '[t]he appointment of an interpreter lies within the sound discretion of the trial judge.'" *United States v. Gonzales*, 339 F.3d 725, 727 (8th Cir. 2003) (quoting *United States v. Coronel-Quintana*, 752 F.2d 1284, 1291 (8th Cir. 1985)) (alteration in original); *see also Luna v. Black*, 772 F.2d 448, 451 (8th Cir. 1985) ("When a trial court is put on notice that there may be some significant language difficulty, the court should determine whether an interpreter is needed; the trial court has wide discretion in making that determination."). In this case, the Court was notified that Ms. Carolino might have some language difficulty, however the Court was also concerned that using an interpreter at trial would diminish the value of Ms. Carolino's deposition testimony, which was given without the assistance of an interpreter. The Court noted that the parties were able to conduct a full deposition of Ms. Carolino months before trial, and nothing was mentioned of needing an interpreter at that time. Under the circumstances, the Court determined that it would allow an interpreter to be present, just in case Ms. Carolino had any difficulty understanding or speaking during her testimony. The Court believes that this was a fair compromise, considering the circumstances. At trial, the Court observed Ms. Carolino's English-speaking ability, both outside the presence of the jury and as she testified in open court. Based on these observations, the Court did not, and does not, believe that it was necessary to utilize the interpreter's services, and exercised its discretion to require Ms. Carolino

to testify without the assistance of an interpreter. Had the Court observed any difficulty in communication, the interpreter would have been called upon immediately to assist Ms. Carolino.

Moreover, as with Plaintiff's *Batson* challenge argument, Plaintiff has again failed to demonstrate how the Court's refusal to allow an interpreter to assist Ms. Carolino during her testimony affected the outcome in this case. Plaintiff has not even argued that Ms. Carolino actually had any difficulty understanding the questions asked of her or communicating her responses. Without proof that Ms. Carolino's testimony would have been different, or that it would have been received differently, Plaintiff is unable to demonstrate prejudicial error. As such, the Court cannot conclude that a new trial is necessary due to its refusal to allow Plaintiff to use a Tagalog-English interpreter during the trial testimony of Josephine Carolino.

## IV. CONCLUSION

The Court finds that Plaintiff has failed to establish that a new trial is necessary to avoid a miscarriage of justice, because the Court did not err in overruling the peremptory challenge Plaintiff exercised against Juror 17, nor did the Court err in disallowing Plaintiff's use of interpretation services during the testimony of witness Josephine Carolino. The Court will thus deny Plaintiff's Motion for New Trial. Additionally, the Court will deny Defendant St. John's Mercy Health System's request that the Court revisit its Rule 50 Motions.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for New Trial Pursuant to Federal Rule of Civil Procedure 59(a)(1)(A) [doc. #165] is **DENIED**.

Dated this 7th Day of January, 2011.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE